**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230249-U

Order filed January 14, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| ROBIN KIAMCO, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-23-0249 |
| v. | ) | Circuit No. 21-D-1360 |
| | ) | |
| VICKIE KIAMCO, | ) | Honorable |
| | ) | Linda E. Davenport, |
| Respondent-Appellant. | ) | Robert E. Douglas, |
| | ) | Judges, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Respondent failed to present a sufficiently complete record to support her claims of error regarding the trial court's alleged bias, treatment of her alleged disability, and findings regarding petitioner's income. We lack jurisdiction to consider respondent's challenges arising from the post-decree proceedings. Affirmed in part and appeal dismissed in part.

¶ 2    Respondent, Vickie Kiamco, appeals the trial court's judgment for dissolution of marriage.

Respondent argues that (1) the court violated the Americans with Disabilities Act (ADA) (42

U.S.C. § 12101 *et seq.* (2018)) and the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) by "forcing" respondent to represent herself and failing to provide her with disability accommodations; (2) the court displayed bias against respondent; (3) the court's finding regarding petitioner, Robin Kiamco's, income was against the manifest weight of the evidence; (4) the court erred during certain post-decree proceedings when it "block[ed] and withh[eld]" trial transcripts and fee waivers requested by respondent and modified the judgment without jurisdiction to do so. For the reasons set forth below, we affirm the court's judgment and dismiss the appeal in part.

¶ 3                                              I. BACKGROUND

¶ 4        The parties were married on June 12, 1999, and share two emancipated children. Petitioner filed a petition for dissolution of marriage on July 23, 2021. Justice Linda Davenport presided over this matter at the outset but was appointed to the Illinois Appellate Court in December 2022. Judge Robert Douglas was subsequently assigned to her docket and presided over the trial. The common law record is voluminous, and we recount only the portions that pertain to the issues raised on appeal.

¶ 5        At the time of trial, petitioner was self-employed selling health insurance and information technology services. Respondent was employed as a program coordinator at a non-profit. During the marriage, the parties resided at the marital residence in Wood Dale. Petitioner moved out of the marital residence in July 2021 and into a separate property in Wood Dale (Wood Dale residence). The Wood Dale residence is owned by the Robert C. Kiamco Trust; Robert Kiamco is petitioner's father. Respondent continued to reside in the marital residence throughout trial.

¶ 6        Initially, respondent was represented by Beermann LLP. During this time, respondent tendered her financial affidavit and served upon petitioner a request to produce documents and

interrogatories. Respondent sought temporary and interim relief in the form of an allocation of household expenses for the marital residence, temporary maintenance, and interim and prospective attorney fees and costs. On October 20, 2021, respondent was awarded temporary monthly maintenance in the amount of $850; petitioner was ordered to pay the mortgage, insurance, and real estate taxes on the marital residence; and respondent was ordered to pay the utilities associated with the marital residence. The parties were further ordered to equally divide the cost of uncovered medical, dental, optical, and psychological expenses. These terms were retroactive to September 1, 2021. Respondent's motion for interim and prospective attorney fees and costs was entered and continued to a future date.

¶ 7    Petitioner failed to timely respond to respondent's request for production of documents, prompting respondent's November 12, 2021, motion to compel. The court ordered petitioner's compliance by December 7, 2021. Thereafter, respondent issued various subpoenas for records to financial institutions. Following a pretrial conference, petitioner was ordered to produce additional discovery responses by April 6, 2022.

¶ 8    On April 7, 2022, respondent filed a motion to modify the temporary order, for sanctions, and for other relief, alleging that an "extensive analysis of [petitioner]'s discovery" revealed that petitioner earned a "substantial gross income." Respondent claimed that petitioner had been "cagey" regarding his finances and tendered an inaccurate financial affidavit. That same day, respondent also filed a petition for adjudication of indirect civil contempt, for discovery sanctions, and for other relief, claiming, *inter alia*, that petitioner failed to comply with discovery. At the presentation of these motions, petitioner was granted time to respond and respondent's motion for interim and prospective attorney fees and costs was, again, entered and continued.

3

¶ 9          On April 20, 2022, Beermann LLP filed a motion to withdraw as respondent's counsel, which was granted on June 13, 2022. Respondent was granted 21 days to either retain new counsel or file an appearance. On July 14, 2022, Chicago Advocate Legal, NFP, filed an appearance on respondent's behalf.

¶ 10         On August 23, 2022, petitioner filed a certificate of service enumerating 59 supplemental discovery responses that were sent to respondent's counsel. On September 2, 2022, Chicago Advocate Legal, NFP, was granted leave to withdraw as respondent's counsel. Respondent was given 21 days to hire new counsel or file an appearance. On September 28, 2022, petitioner filed a motion for default.

¶ 11         Also on September 28, 2022, petitioner filed a "Petition for Temporary Relief—Contribution to Tax Liability." Petitioner alleged that the parties filed joint income tax returns during the marriage but that respondent self-reported to the Internal Revenue Service that they underreported their income for prior years. As a result, the parties' accountant prepared amended tax returns for 2019 and 2020, as well as 2021 joint tax returns, but respondent refused to sign them. Petitioner requested that respondent be ordered to pay the additional costs incurred by her refusal to cooperate. On September 30, 2022, petitioner's motions were entered and continued, and respondent was granted an additional seven days to file her *pro se* appearance. Respondent filed her *pro se* appearance the same day.

¶ 12         Respondent filed at least 25 motions between October 5, 2022, and December 6, 2022. Her motions were accompanied by thousands of pages of exhibits. We detail only the motions that are relevant to the issues raised on appeal or provide greater context for the case.

¶ 13         On October 5, 2022, respondent filed a motion titled "[Petitioner] + [petitioner] alone is responsible for the additional money owed from his fraudulent filings to healcare.gov [*sic*]."

4

Respondent alleged, *inter alia*, that she discovered petitioner's "tax crimes" in the spring of 2021 and, thereafter, told petitioner that she would not file joint tax returns with him. This motion was taken with the case.

¶ 14　　In a separate motion filed on October 5, 2022, respondent alleged, *inter alia*, that the Wood Dale residence was purchased with marital funds and that "[petitioner] worked with his father and his attorney to hide his ownership + to keep it out of the marital estate." Respondent further claimed that "[petitioner]'s father stated that he gives [petitioner] a check for any amount that he asks for whenever he asks." Respondent requested a sum equal to the amount of money petitioner used towards the Wood Dale residence so she could relocate. In support, respondent listed several items in the marital residence that were in disrepair, claimed that petitioner had made three attempts on her life, and stated that mold in the marital residence had "an adverse effect on her breathing + overall health." She claimed that she needed "to relocate far from here to another state for her health + safety." Attached as exhibits, but not specifically referenced or otherwise explained in the motion itself, are what purports to be several of respondent's medical records. The documents disclosed, *inter alia*, asthma and a January 2022 slip and fall incident wherein respondent hit the back of her head, leading to post-concussive syndrome symptoms of "short-term memory loss, confusion, inability to concentrate, loss of balance, headache, blurred vision, tinnitus and jaw pain." By agreement of the parties, respondent was granted leave to relocate.

¶ 15　　In another October 5, 2022, motion, respondent claimed, *inter alia*, that petitioner "forged tax returns" during the parties' marriage, and that respondent "was not allowed to see, sign, or even meet with" the accountant. Respondent further alleged that petitioner failed to disclose transactions from his Venmo, Cash App, PayPal, eBay, and other accounts. She stated that petitioner did not provide discovery, as he "only shared a few stand alone statements" and "only

5

shared 49 [client] invoices." Respondent further claimed that petitioner failed to tender a business valuation and "filed patently false financial affadavits [*sic*] + interrogatories." Respondent argued that the court should impute income to petitioner, including his "leagally [*sic*] obtain [*sic*] gains, *** illegally obtained gains, [and] his parents [*sic*] *** annual gift." She alleged that petitioner's parents' gift was in the amount of $25,000 to $50,000. Moreover, respondent claimed that petitioner's parents never loaned him money and that the promissory notes tendered to this effect by petitioner were fraudulent. This motion was denied.

¶ 16    The same day, respondent filed another motion requesting that she not be held to the same standard as an attorney. She argued that she tried to hire attorneys but that they harmed her and "lied, deceived, withheld information, refused to file motions on her behalf." She stated that she was "representing herself under protest" and that she lacked "the time, health, mental capacity to learn the law." She argued that "[d]ue to TBI, PTSD, and a host of other ongoing heath [*sic*] issues, it would be unfair" of the court to hold her to the same standard as an attorney. Respondent attached to her motion approximately 95 pages of what appears to be confidential communications with her attorneys. This motion was denied.

¶ 17    On October 7, 2022, respondent filed a motion requesting petitioner's entire client list, alleging that he failed to claim the income earned from his " 'cash' clients." Additionally, respondent alleged that, in 2021, petitioner admitted that, with the help of the accountant, he " 'managed the numbers' " for the parties' tax returns to make them believable while obtaining the "maximum subsidy from Healthcare.gov." At this point, respondent consulted with a tax attorney, obtained bank statements and copies of the tax returns, and "turn[ed] [petitioner] in." This motion was dismissed.

¶ 18　　　　The court entered a trial order on October 11, 2022. Discovery was to be completed by December 1, 2022, and the parties were to exchange, *inter alia*, witness disclosures and exhibits by January 10, 2023. Trial was scheduled to commence on January 11, 2023.

¶ 19　　　　On October 25, 2022, respondent filed a motion for substitution of judge as a matter of right, which was denied.

¶ 20　　　　On October 27, 2022, petitioner issued several subpoenas seeking respondent's financial records. On November 1, 2022, petitioner filed a motion to compel discovery and for sanctions, citing several deficiencies in respondent's prior discovery responses. Thereafter, petitioner filed a petition to modify temporary support and for other relief, alleging, *inter alia*, that respondent withdrew $5000 from the parties' joint bank account, leaving only $119 behind, rendering it impossible for petitioner to pay temporary maintenance. He requested, *inter alia*, that his temporary maintenance obligation be terminated or modified.

¶ 21　　　　On December 1, 2022, the court granted petitioner's motion to compel and outlined the discovery respondent was to produce by December 30, 2022. Thereafter, respondent filed a motion for substitution of judge for cause, alleging, *inter alia*, that the court was biased against her. In support, she argued that her motions were "ruled on later" or denied, while the court heard petitioner's motions. She accused the court of participating in and escalating domestic abuse, as well as "upping the financial abuse" and trying to make respondent homeless and bankrupt. Moreover, respondent complained that petitioner was not ordered to turn over discovery and did not follow orders. This motion was rendered moot by Justice Davenport's appointment to the Illinois Appellate Court and Judge Robert Douglas's subsequent assignment.

¶ 22　　　　Also on December 1, 2022, respondent filed a motion stating,

7

"I have filed motion after motion for you to make him turn over discovery. To quit abusing us. To turn over discovery[.] To hold him accountable for his lies. You set every one aside or deny them. Yet you go through his and award him with any thing he has asked. Why do you only help the abuser? Why does he not have to turn over discovery?"

This motion was taken with the case.

¶ 23 On December 6, 2022, the court entered an order providing that, *inter alia*, "failure to produce any exhibit in a timely manner may result in said exhibit being barred at trial." On December 20, 2022, and December 27, 2022, petitioner filed certificates of service outlining various promissory notes, credit card statements, bank statements, and other financial documents that were tendered to respondent.

¶ 24 On January 9, 2023, two days before trial, petitioner filed a motion *in limine*, arguing that respondent should be barred from offering documents at trial that were not timely produced during discovery. The same day, respondent issued several witness subpoenas and a subpoenas *duces tecum* to various third parties. On January 10, 2023, petitioner filed a motion *in limine* to bar testimony from undisclosed witnesses, arguing that respondent failed to timely disclose any witnesses. He also filed a motion to quash respondent's subpoenas, arguing that the subpoenas *duces tecum* were untimely; the witness subpoenas were improperly served and respondent failed to disclose the named individuals as witnesses; subpoenas issued to the parties' children were inappropriate and issued for an improper purpose; and respondent failed to provide petitioner with proper notice of the issuance of subpoenas. All three motions were granted.

¶ 25 Trial spanned eight non-consecutive days, and respondent filed 13 additional motions during the periods of recess, all of which were denied as untimely. At the close of trial, the parties were ordered to submit a written closing argument and proposed judgment by April 17, 2023.

8

Petitioner timely filed his closing argument and proposed judgment; respondent did not file either. Petitioner also filed a petition for contribution to attorney fees and costs, arguing that the expenses were "primarily attributable to [respondent]'s improper, harassing conduct," including her excessive litigiousness, improper filings, meritless pleadings, failure to comply with discovery, violation of court orders, meritless claims at trial, improper use of dissolution proceedings as a criminal investigation tool, false testimony, hypocritical positions, and wasting of the court's time.

¶ 26    The judgment was entered on April 28, 2023. Prior to making its findings, the court noted that it "considered all matters of record, including but not limited to the testimony of the parties, the documents admitted into evidence, all matters of record (including but not limited to the thousands of pages of documents filed by [respondent]), the pleadings, admissions, and stipulations of the parties." We note that the record contains neither trial exhibits nor a report of proceedings and, therefore, any reference herein to testimony or other evidence presented at trial is derived from the judgment itself. We recount the provisions of the judgment that pertain to the issues raised on appeal.

¶ 27    The court found that, in 2022, petitioner earned business revenue of $57,590.32 and paid $25,310.38 in ordinary and necessary business expenses, resulting in a gross income of $32,279.94. The court accepted the adjusted gross income reported on petitioner's federal income tax filings. The court found that petitioner has no other sources of income or employment, receives no cash income, and does not trade services with anyone. The court rejected respondent's argument that petitioner's income should be calculated based upon the total deposits into the parties' bank account, reasoning that other monies were deposited into the account as well, including respondent's paychecks, tax refunds, stimulus payments, and financial assistance from petitioner's parents. Moreover, respondent's approach failed to consider petitioner's ordinary and necessary

9

business expenses. The court noted that respondent failed to offer a specific figure for petitioner's salary; instead, she merely testified that it must be more than what appeared on the tax returns because the bank deposits showed a larger sum.

¶ 28 The court found that respondent earned $38,725 in employment income in 2021. On the seventh day of trial, respondent disclosed for the first time that she applied for Social Security Disability benefits but presented no documents supporting her claim or evidencing the amount of her anticipated benefits. Respondent did not provide any evidence to suggest that her employment or income differed from 2021 and, therefore, the court set her income at $38,725.

¶ 29 The court identified the statutory factors as set forth in the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504(a) (West 2020)) that are to be considered when determining whether maintenance is appropriate. The court "gave particular weight" to the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance; the needs of each party; the present and future earning capacity of each party; and the standard of living established during the marriage. *Id.* Specifically, the court found that "[t]he parties are the same age, have roughly equivalent earnings, and roughly equivalent earning capacities." The court noted that respondent claimed to have a physical disability but that she presented no evidence apart from her own testimony to substantiate a claim of diminished earning capacity. The court found that maintenance was not appropriate and "forever barred" each party from receiving maintenance.

¶ 30 The court further found that respondent withdrew $28,595.69 from various marital accounts during the pendency of the case and that, although respondent testified that she spent this money on bills, she had no receipts to support her claim. The court found that respondent's explanation regarding these transactions was "not credible and not persuasive." The court also

10

emphasized that respondent failed to voluntarily produce her bank statements; rather, they were subpoenaed by petitioner. The court included these withdrawals in respondent's share of the marital assets. Moreover, the marital residence was to be listed for sale, with respondent receiving 55% of the net sale proceeds and petitioner receiving 45%.

¶ 31 The court noted that both parties testified that their 2019 and 2020 jointly filed income tax returns contained errors that resulted in substantial tax refunds. Petitioner testified that the errors were unintentional and that he hired a new accountant to amend the tax returns. Respondent testified that she believed that petitioner intentionally understated his business income and that she refused to sign any amended returns to preserve her right to assert an innocent spouse defense in the event of an audit. It was undisputed that respondent tried to have the IRS investigate petitioner's "tax fraud" and contacted them several times to inquire about the status of the investigation. To the extent petitioner oversaw the preparation of the parties' 2019 and 2020 tax returns and respondent withheld the appropriate amount from her paychecks each year, any outstanding tax liabilities or refunds resulting from the amended tax returns were assigned to petitioner.

¶ 32 Turning to the parties' debt, the court found that, beginning in January 2021, the parties incurred extraordinary expenses and petitioner had legitimate financial needs for which he sought assistance from his parents. The court framed the issue as whether the assistance from petitioner's parents constituted a gift or a marital debt. Both parties testified that petitioner's parents gifted them more than $99,000 in 2021. Petitioner testified that "his parents' generosity was exhausted" thereafter. The court found that, as of January 2022, "each and every disbursal of funds by [petitioner]'s parents on his behalf was accompanied by a contemporaneously executed promissory note, signed by [petitioner] and his father, for the exact amount disbursed." Moreover, the

11

payments were given "directly to the mortgage lender and the credit card companies or retained by Robert Kiamco for rent on the [Wood Dale residence]." The court found that the loans totaled $16,500 for rent for the Wood Dale residence; $32,182.28 for mortgage payments on the marital residence; and $45,549.77 for credit cards. Reasoning that petitioner "credibly testified that he contemporaneously signed the promissory notes, tracked the debt to his father, correlated the amounts disbursed to the promissory notes, and that his father expects to be repaid when the marital residence is sold," the court found that the sums owed to Robert Kiamco were marital debts. Furthermore, the court found that respondent had borrowed $20,000 from a friend, Maria Freeman, and that this was also a marital debt. These debts were to be paid from the net proceeds from the sale of the marital residence prior to distribution to the parties.

¶ 33    In ruling upon petitioner's petition for contribution to attorney fees and costs, the court found as follows:

"[Respondent] willfully and unnecessarily increased the cost of litigation by actions including, but not limited to, the following: filing of excessive pleadings (at least 40 of them), consisting of thousands of pages, most of which were without merit; improperly filing thousands of pages of documents in violation of Supreme Court Rule 138, necessitating the sealing and impoundment of the court file; filing of meritless pleadings that were without any good faith basis in fact or at law; failing to comply with reasonable discovery requests; Refusing to follow Court Orders, including the orders to produce discovery and to list and sell the marital residence; the assertion of meritless claims at trial, such as the claim that [the Wood Dale residence] was owed by [petitioner], despite having no evidence to support such a claim; engaging in litigation for improper purposes, which she explicitly acknowledged in her testimony that her goal was for [petitioner] to be

12

imprisoned; providing self-contradictory and incredible testimony regarding that parties joint *** checking account ***, their daughter's account at Parkway Bank ***, their son's UTMA account ***; and taking hypocritical positions regarding discovery production, and generally dragging things out at trial. With regard to that last point, the Court notes that there was absolutely no reason for this trial to have taken eight days to complete, but for [respondent]'s wasting of the Court's time. For example, [respondent] refused to give straightforward answers to simple questions, resulting in countless admonitions by the Court for her to simply answer the question and refrain from providing unsolicited narrative; [respondent] showed up for court unprepared and disorganized, resulting in hours of idle silence during the proceedings while she searched through her papers and decided which subject she wanted to inquire about next; [respondent] spent great lengths of time to prove insignificant points *** [.] Additionally, [respondent] spent half an afternoon reading into the record an offer of proof consisting of her self-prepared 'transcript' [of] a Zoom meeting between the parties, their adult children, and [petitioner]'s parents, which the Court ruled as inadmissible hearsay. The Court has had ample opportunity to observe [respondent] and her demeanor."

Respondent was ordered to contribute $25,000 to petitioner's attorney fees from her share of the net sale proceeds from the sale of the marital residence.

¶ 34       Respondent timely appealed.

¶ 35                                    II. ANALYSIS

¶ 36       Initially, we note that respondent utilized the form appellant brief that has been approved by the Illinois Supreme Court. Respondent's opening brief consists of 29 pages, although several were left blank, and is followed by a certificate of compliance, proof of service, and appendix.

Thereafter, respondent appended 48 untitled, single-spaced pages of additional narrative and argument, some of which appear to have been taken directly from her opening brief. Respondent's arguments on appeal are disjointed and underdeveloped. It is difficult to ascertain which statements are intended to convey a legal challenge to the judgment or underlying proceedings, and which are merely personal grievances against the court.

¶ 37 "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive legal arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation]." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). A potential consequence of the failure to comply with these requirements is the forfeiture of the arguments on appeal, although the court may choose to nevertheless proceed to the merits of the arguments raised. *In re A.H.*, 215 Ill. App. 3d 522, 529 (1991) (noting that this rule "is an admonishment to the parties, and not a limitation upon the court's jurisdiction"). We acknowledge that respondent proceeds as a self-represented litigant in this court, as she did in the trial court. However, self-represented litigants are not excused from compliance with these requirements. *Id.* at 529-30.

¶ 38 Notwithstanding the deficiencies in respondent's opening brief, we have distilled her central arguments to the best of our ability as follows: (1) the court violated the ADA and the fourteenth amendment by "forcing" respondent to represent herself and failing to provide her with disability accommodations; (2) the court displayed bias against respondent; (3) the court's finding regarding petitioner's income was against the manifest weight of the evidence; (4) the court erred during certain post-decree proceedings when it "block[ed] and withh[eld]" the trial transcripts and

14

fee waivers respondent requested and modified the judgment without jurisdiction to do so. We address her arguments in turn.

¶ 39                                    A. Pre-Decree Proceedings

¶ 40          We first consider respondent's arguments related to the pre-decree proceedings. First, respondent contends that the court violated the ADA and the fourteenth amendment by failing to provide her with disability accommodations and "forcing" her to represent herself. She alleges that the court threatened her and "exacerbated her disabilities in order to sanction and discredit her." Second, respondent argues that the court was biased against her, claiming that the court relied upon its longstanding relationship with petitioner's counsel to assess credibility at trial. She claims that the court refused to let her present evidence to contradict petitioner's "numbers"; "copy and pasted" petitioner's proposed judgment into the judgment; and ignored respondent's closing argument and prayer for relief. Third, respondent challenges the court's finding of petitioner's income as being against the manifest weight of the evidence, arguing that the court relied upon perjured tax returns, allowed petitioner and his counsel to misrepresent facts, and erroneously judged petitioner and his counsel as credible.

¶ 41          Prior to reaching the merits of respondent's argument, we must determine whether she forfeited her arguments pertaining to her alleged disability. See *People v. Smith*, 228 Ill. 2d 95, 106 (2008) (noting that one of the most important tasks of an appellate court when beginning the review of a case is to determine whether any issues have been forfeited so as to prevent the "unnecessary expenditure of judicial resources"). Petitioner contends that the issues related to respondent's alleged disability and need for accommodations were raised for the first time on appeal and, therefore, forfeited.

15

¶ 42    A claim that is not brought before the trial court cannot be raised for the first time on appeal. *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 33. Where a party fails to raise an issue before the trial court, the opposing party is deprived of the ability to appropriately respond with its own evidence and argument, thereby weakening the adversarial process. *Id.* Accordingly, a claim raised for the first time on appeal is forfeited. *Deutsche Bank National Trust Co. v. Cortez*, 2020 IL App (1st) 192234, ¶ 32.

¶ 43    While we are unable to locate in the record respondent's claim that she is disabled or required accommodations, the maintenance provision of the judgment recognizes that respondent claimed to have a physical disability but that she produced no evidence to support a diminished earning capacity. Thus, although the exact timing and nature of this claim remains unclear, it does appear to have been raised and considered by the court in some capacity. The issue was not forfeited on this basis.

¶ 44    Nonetheless, respondent failed to provide us with a complete record to substantively address her challenges to the pre-decree proceedings."[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) provides that the record on appeal shall contain, *inter alia*, the entire common law record, which "includes every document filed, judgment, and order entered and any exhibit offered and filed by any party," as well as any report of proceedings prepared in accordance with Illinois Supreme Court Rule 323. A report of proceedings shall include a verbatim transcript of the proceedings or, if a transcript is unavailable,

then a suitable alternative such as a certified bystander's report or agreed statement of facts. Ill. S. Ct. R. 323(a), (c)-(d) (eff. July 1, 2017).

¶ 45        Here, the record contains neither a report of proceedings from any of the underlying proceedings nor trial exhibits. We are presented only with respondent's bare assertions without any way to meaningfully review the evidence relied upon by the court or the court's conduct. Respondent failed to provide a complete record for our review, and we therefore must "presume[] that the order entered by the trial court was in conformity with law and had a sufficient factual basis" and resolve all "doubts which may arise from the incompleteness of the record" against respondent. *Foutch*, 99 Ill. 2d at 391-92. Indeed, the judgment indicates that the court "considered all matters of record," including the parties' testimony, documentary evidence, pleadings, admissions, and stipulations. We affirm the judgment.

¶ 46                                B. Post-Decree Proceedings

¶ 47        Respondent next argues that the trial court erred during certain post-decree proceedings, and we note that all such proceedings are missing from the record entirely. Respondent argues that the trial court erred when it "block[ed] and withh[eld]" her post-decree requests to obtain fee waivers for the trial transcripts[1] and modified the judgment without jurisdiction to do so. In response, petitioner contends that we are without jurisdiction to reach the merits of any post-decree

---

[1] On November 9, 2023, following respondent's submission of an ADA accommodation request to this court, respondent was granted a 60-day extension to file her opening brief; provided resources for self-represented litigants; and advised to petition the trial court for a fee waiver to obtain the transcripts necessary to pursue her appeal. The record on appeal does not contain any post-decree proceedings, so it is unclear whether respondent filed a petition for a fee waiver or, if she did, how the trial court ruled.

17

issue because the corresponding orders are not referenced in respondent's notice of appeal, nor did she file an amended notice. For the reasons set forth below, we dismiss this portion of the appeal.

¶ 48    While the deficiencies in the record certainly present an insurmountable obstacle to our review, the more pressing issue is the jurisdictional problem created by respondent's arguments. Pursuant to Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017), a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Thus, a reviewing court's jurisdiction is limited to a review of only the judgment or parts thereof that are specified in the notice of appeal. *Smith*, 228 Ill. 2d at 104. Notwithstanding, a notice of appeal is to be liberally construed, bearing in mind that its purpose "is to inform the party prevailing in the trial court that the other party seeks a review of the judgment" and that defects of form rather than substance are not fatal. *Id.* at 104-05. "Accordingly, notice should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229 (1991).

¶ 49    The judgment was entered on April 28, 2023. When prompted by the form notice of appeal to "[l]ist the date of every order or judgment you want to appeal," respondent included only the date of the judgment. At no point did she file an amended notice of appeal seeking our review of any post-decree orders.[2] Even a liberal construction of respondent's notice of appeal fails to

---

[2] On June 4, 2024—one day after petitioner filed his appellee brief highlighting the deficiencies in respondent's notice of appeal—respondent filed a motion with this court seeking to "[e]xpand this appeal to include post-trial judgements and actions taken since the conclusion of [the trial court case number]." Attached to the motion as Exhibit A was a 16-page screenshot of the online case history, which appears to show the titles of various record

counter the conclusion that it failed to "fairly and adequately set out the judgment complained of" as being a post-decree order. The notice did not adequately notify petitioner of the nature of this portion of the appeal. While we recognize that respondent listed the dates of 12 post-decree orders in her opening brief, this does not cure the substantive defect found in her notice of appeal. See *Smith*, 228 Ill. 2d at 105 (holding that the appellate court lacked jurisdiction where the notice of appeal referred only to a November 10, 2004, judgment for purposes of review, but the appellant's brief identified a February 21, 2006, order as the judgment from which he appealed). Accordingly, we dismiss this portion of the appeal for lack of jurisdiction.

¶ 50                                              III. CONCLUSION

¶ 51          For the reasons stated herein, we affirm the judgment of the circuit court of Du Page County.

¶ 52          Appeal dismissed in part. Affirmed.

---

entries throughout the case without any further detail. Attached as Exhibit B was a purported email chain between respondent and then-Du Page County Chief Judge Kenneth L. Popejoy. The motion was denied.

19